UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
LISA D. JOHANNES,

      Plaintiff,

-against-　　　　　　　　　　　　　　　　　　　**MEMORANDUM & ORDER**
　　　　　　　　　　　　　　　　　　　　　　　17-CV-3899 (CBA)(AYS)

MICHELLE M. LASLEY and UNITED
STATES POSTAL SERVICE,

      Defendants.
----------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

  Plaintiff Lisa D. Johannes ("Johannes" or "Plaintiff") commenced this action against Michelle M. Lasley ("Lasley") and the United States Postal Service ("USPS") (collectively "Defendants") pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq., alleging that Plaintiff sustained serious injury and economic loss as a result of an incident that occurred on January 5, 2016, involving Plaintiff and a Postal truck driven by Lasley, a USPS employee acting in the course of her employment. See generally Complaint, Docket Entry ("DE") [1]. Plaintiff alleges she was hit by the postal truck and the collision was due to Lasley's negligence. Id.

  On December 19, 2018, Plaintiff filed a letter-motion to compel production of documents. DE [18]. On February 19, 2019, this Court granted Plaintiff's motion. See Electronic Order dated 2/19/2019. Currently before the Court is Defendants' motion for reconsideration. See DE [19]. For the reasons discussed below, having considered Defendants' motion for reconsideration, the Court declines to modify its 2/19/2019

Order.

DISCUSSION

I. Legal Principles: Standard Applicable on Motions for Reconsideration

The standard for granting a motion for reconsideration is strict, and "[r]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd., 628 F. App'x 793, 796 (2d Cir. 2015)(quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) ); see also Oparah v. New York City Dep't of Educ., 670 F. App'x 25, 26 (2d Cir. 2016) ("The standard for granting a motion to reconsider 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'"); S.D.N.Y./E.D.N.Y. Local Civ. R. 6.3 (The moving party must "set[ ] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked.").

It is thus well settled that a motion for reconsideration is "'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite of the apple.'" Salveson v. JP Morgan Chase & Co., 663 F. App'x 71, 75-76 (2d Cir. 2016) (quoting Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012)). A motion for reconsideration is "'neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made.'" Salveson v. JP Morgan Chase & Co., 166 F. Supp. 3d 242, 248 (E.D.N.Y. 2016) (quoting Simon v. Smith &

Nephew, Inc., 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014)), aff'd, 663 F. App'x 71 (2d Cir. 2016). Simply put, in order to prevail on a motion for reconsideration, "the moving party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion." Lichtenberg v. Besicorp Grp. Inc., 28 F. App'x 73, 75 (2d Cir. 2002) (citations and internal quotation marks omitted); see also Stoner v. Young Concert Artists, Inc., 2013 WL 2425137, at *1 (S.D.N.Y. May 20, 2013) ("A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already examined simply because [a party] is dissatisfied with the outcome of his case. To do otherwise would be a waste of judicial resources.") (alteration in original).

II. The Motion

Defendants argue that because Plaintiff's discovery motion was grated as unopposed, this Court should grant the motion for reconsideration. Defendants further argue that the documents in question are indeed protected by privilege and thus are not entitled to production.

    A. Defendants' Failure to Timely Oppose

The Defendants first argue that because the Court granted Plaintiff's application as unopposed and did not base its decision on the merits, the Court should reconsider its Order and excuse Defendants' failure to oppose the motion.

Preliminary, this Court points out that Plaintiff filed her motion on December 19, 2018. While Defendants cite to the lapse of appropriations that began on December 21, 2018 and lasted through January 26, 2019, which prohibited Department of Justice attorneys from working, among the reasons for Defendants' failure to timely respond to

the motion, this Court did not issue its Order granting Plaintiff's motion until February 19, 2019. Further, Defendants never sought a stay of the case during the 35-day appropriations lapse, nor sought an extension or time to respond to the motion once appropriations were restored. Recognizing the substantial time-gap between the restoration of appropriations and this Court's Order, namely some three-weeks, defense counsel then cites to "her own administrative error" as the reason for the failure to respond. See Defs' Memo at 5, DE [19-1]. Defendants have not provided a reasonable excuse and thus have failed to show the requisite good cause needed for this Court to vacate its Order.

Under Federal Rule of Civil Procedure 6(b)(1)(B), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b) (1)(B). The determination whether a party's neglect is "excusable" is, "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). In making that determination, the Supreme Court has directed courts to consider the following factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant, and (4) whether the movant acted in good faith. Id. The Second Circuit has held that the third factor—the reason for the delay, and whether it is within the reasonable control of the movant—is the most important, since the other three factors will often favor the movant. See Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366

(2d Cir. 2003). "The equities will rarely if ever favor a party who 'fail[s] to follow the clear dictates of a court rule.'" Id. at 366–67 (citing Canfield v. Van Atta Buick/GMC Truck Inc., 127 F.3d 248, 249–50 (2d Cir. 1997)). Thus, "[w]here ... the rule is entirely clear ... a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer test." Canfield, 127 F.3d at 249–50 (holding not clearly erroneous the district court's decision that a lawyer's failure to file motion papers within the time limit established by a local rule was not excusable neglect under Rule 60(b)); see Silivanch, 333 F.3d at 367–70 (collecting cases finding no excusable neglect where counsel failed to comply with a clear deadline).

Here, the Court finds that Defendants failed to establish that their failure to respond was a product of "excusable neglect." Counsel's excuses for her failure to adhere to the deadline are unconvincing. Counsel cites "her own administrative error" and lapse of approbations from December 21, 2019 to January 26, 2019 as the reason for her failure to respond. However, "her own administrative error" is no excuse for lack of diligence in complying with clearly established deadlines. Moreover, while the lack of appropriations that forced counsel not to work from December 21, 2019 to January 26, 2019 was surely not within her control, upon restoration of the appropriations counsel could and should have made a proper request for an extension of time under Rule 6(b). See Delacruz v. Stern, 166 F.3d 1200 at *2 (2d Cir. 1998) ("[i]f additional time to replead was needed because of the attorney's marital problems, an application for an extension of time should have been filed."). See Turner v. Hudson Transit Lines, Inc., 1991 WL 123966, at *3 (S.D.N.Y. July 2, 1991) ("Counsel's excuse for his untimely submission of papers is his own vacation ... counsel could have readily arranged for another attorney to cover for him

5

during that period, or could have made a proper request for an extension of time under Rule 6(b) before leaving for vacation. Further, it would not seem impossible to draft a memorandum of law supporting an objection to a simple discovery ruling in the six days between Judge Francis's ruling and the planned start of defense counsel's vacation.").

As noted by the Second Circuit,

> [w]e operate in an environment ... in which substantial rights may be, and often are, forfeited if they are not asserted within time limits established by law ... We ... have considerable sympathy for those who, through mistakes-counsel's inadvertence or their own-lose substantial rights in that way. And there is, indeed, an institutionalized but limited flexibility at the margin with respect to rights lost because they have been slept on. But the legal system would groan under the weight of a regimen of uncertainty if which time limitations were not rigorously enforced—where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar.

Silivanch, 333 F.3d at 367-68. Accordingly, Defendants' motion for reconsideration of this Court's Order granting Plaintiff's discovery application due to Defense counsel's failure to respond is denied.

### B. The Production Is Not Privileged

Defendants claim that the prevention of manifest injustice warrants reconsideration of this Court's decision to grant Plaintiff's motion to compel production of the unredacted documents. Defendants claim the self-critical analysis privilege applies to the redactions at issue as well as the work-product privilege. However, Defendants have not cited to any controlling case law to dissuade this Court from ordering the production of the unredacted documents.

In general, a party may obtain discovery of any non-privileged matter that is

relevant to a claim or defense of any party and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Nonetheless, a court has discretion to circumscribe discovery even of relevant evidence by making any order which justice requires "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); see Herbert v. Lando, 441 U.S. 153, 177 (1979).

The self-critical analysis privilege concerns situations where "'an intrusion into the self-evaluative analysis of an institution would have an adverse effect on the [evaluative] process, with a net detriment to a cognizable public interest.'" Troupin v. Metro. Life Ins. Co., 169 F.R.D. 546, 548 (S.D.N.Y. 1996) (citations and quotation omitted). Put another way, "if a party has conducted a confidential analysis of its own performance in a matter implicating a substantial public interest, with a view towards correction of errors, the disclosure of that analysis in the context of litigation may deter the party from conducting such a candid review in the future." Wimer v. Sealand Serv., Inc., 1997 WL 375661 at *1 (S.D.N.Y. July 3, 1997).

Whether the self-critical analysis privilege should be recognized in federal courts has yet to be decided by the Supreme Court or the Second Circuit. One court observed that "this particular privilege has led to a checkered existence in the federal courts." Wimer, 1997 WL 375661 at *1.

In Robinson v. Untied States, 205 F.R.D. 104 (N.D.N.Y. 2001), the same redactions at issue here, namely the Postal Service redacted the same sections to the same 1769 forms, were examined. The court held that such redaction was improper and ordered the Post Office to produce unredacted copies. Id. at 109. (Statements as to how the accident occurred, why it occurred, management factors that contributed to the

7

accident, the root causes of the accident, and actions that have been or will be taken to prevent recurrence of each factor and cause are not covered by the privilege.) The Robinson court went on to find that the Form 1769 sections entitled "What actions have or will be taken to prevent recurrence of each factor and cause? Expected completion date of each?" and "explain how the preventive action will eliminate or reduce cause(s) and prevent similar accidents" were also not privileged. Id. at 109-110. The Robinson court concluded that the accident reports are prepared in the course of the Post Office's business for the purpose of preventing future accidents. Robinson held that it would be implausible to believe that the Post Office would cease its practice of investigating accidents and writing up the results, in order to the prevent future accidents, on the basis that such reports could be discoverable, ultimately finding that producing the information would not cause the Post Office injury, "thwart desirable social policies, or affect a substantial public interest." Id. at 110.

Where, as here, a party raises privilege as a basis for withholding otherwise discoverable materials, "the burden is on a party claiming the protection of a privilege to provide evidence sufficient to establish the essential elements of the privileged relationship." S.E.C. v. NIR Grp., LLC, 283 F.R.D. 127, 131 (E.D.N.Y. 2012) (citations omitted). "This burden cannot be discharged by mere conclusory or ipse dixit assertions." Id.

Waiver of privilege may occur where a party fails to list withheld documents on its privilege log. Pursuant to Federal Rule of Civil Procedure 26(b)(5)(A), a party who withholds documents on the account of privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in

8

a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Consistent with that Federal Rule, courts typically require that parties provide a detailed privilege log for all documents withheld. See Trudeau v. N.Y. State Consumer Prot. Bd., 237 F.R.D. 325, 334 (N.D.N.Y. 2006) ("In this respect, and in order to evaluate and facilitate the determination of whether a privilege exists, courts generally require compliance with th[e] statutory mandate [of Fed. R. Civ. P. 26(b)(5) ] that an adequately detailed privilege log be provided."). Fed. R. Civ. P. 26 is further supplemented by Local Civil Rule 26.2, which requires that a party withholding documents on the grounds of privilege set forth: "(i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other...." Local Civil Rule 26.2(a)(2)(A); see also Go v. Rockefeller Univ., 280 F.R.D. 165, 174 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26(b)(5) and Local Civil Rule 26.2 in analyzing the sufficiency of a privilege log). In assessing the adequacy of a privilege log, courts must also ask whether it "suffice[s] to establish each element of the privilege or immunity that is claimed." A.I.A. Holdings, S.A. v. Lehman Bros., 2000 WL 1538003, at *2 (S.D.N.Y. Oct. 17, 2000) (quoting Golden Trade, S.r.L. v. Lee Apparel Co., 1992 WL 367070, at *5 (S.D.N.Y. Nov. 20, 1992) ); see also Bowne of N.Y. City, Inc. v. AmBase Corp., 150 F.R.D. 465, 474 (S.D.N.Y. 1993) (explaining that a privilege log should "identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least

9

potentially protected from disclosure").

Consistent with these principles, courts in the Second Circuit have uniformly concluded that "[t]he failure of a party to list a document withheld during the course of discovery on a privileged log ... ordinarily results in a finding that the privilege otherwise asserted has been waived." Feacher v. Intercontinental Hotels Grp.,2007 WL 3104329, at *5 (N.D.N.Y. Oct. 22, 2007); see FG Hemisphere Associates, L.L.C. v. Republique Du Congo, 2005 WL 545218, at *6 (S.D.N.Y. Mar. 8, 2005) ("As other judges in this District and I have repeatedly held, the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege." (citations omitted ); accord Kogut v. Cty. of Nassau, No. 06-cv-6695, 2011 WL 13284714, at *4 (E.D.N.Y. Nov. 14, 2011) ("The failure of defendants to list the ... documents [in question] on a privilege log constitutes a waiver of any applicable privilege.").

In the instant action, Defendants failed to serve a privilege log. Therefore, any potential privilege has now been waived.

In support of their claim of privilege, Defendants cite, inter alia, to Warner v. United States, a Rhode Island case for the assertion that the materials should not be disclosed. 2009 WL 3698018, *4 (D. R.I Nov. 2, 2009). However, while Defendants are correct that court found that the United States could not be compelled to produce the unredacted forms to a plaintiff in an action brought pursuant to the FCTA, the court upheld the redaction only after finding that the redacted materials were after-the-fact opinions and recommendations of an investigator." Id. at *4. Here, the Defendants failed to serve a privilege log and use the instant motion as their initial attempt to justify the

10

claim of privilege. Defendants improperly utilize the instant motion for reconsideration to take a "second bite of the apple." Therefore, unlike the circumstances in <u>Warner</u>, whether the materials in question are factual, opinion or mixed motive cannot be determined. Accordingly, this Court declines to reconsider its Order granting the production of the unredacted documents.

## CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration as set forth in Docket Entry No. [19] is denied. Defendants are directed to produce the unredacted documents to Plaintiff's counsel forthwith.

Dated: Central Islip, New York
       May 2, 2019

                                             /s/ Anne Y. Shields
                                             ANNE Y. SHIELDS
                                             United States Magistrate Judge